UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Zupancich, on behalf of himself
and all others similarly situated,

                    Plaintiff,             **MEMORANDUM OPINION**
                                                  **AND ORDER**
v.                                              Civil No. 08-5847 ADM/RLE

United States Steel Corporation,

                    Defendant.

___

Deanna Dailey, Esq. and Mara Thompson, Esq., Sprenger & Lang, PLLC, Minneapolis, MN appeared for and on behalf of the Plaintiff.

Bruce J. Douglas, Esq. and Carrie Zochert, Esq., Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, MN, appeared for and on behalf of the Defendant.

___

## I. INTRODUCTION

On December 30, 2008, the undersigned United States District Judge heard oral argument on Plaintiff John Zupancich's ("Zupancich") Motion for Remand [Docket No. 7]. Zupancich and the class he seeks to represent allege class-wide violations of Minnesota wage and hour laws and regulations under Rule 5200.0120, subpart 1, of the Minnesota Administrative Code, which require employers to pay employees for time they are required to be on the premises. For the reasons set forth below, Zupancich's motion is denied.

## II. BACKGROUND

Zupancich is a resident of Britt, Minnesota. He began working for Defendant United States Steel ("U.S. Steel") in 1976 and has worked as an hourly employee at its Mt. Iron facility ("Minntac") since 1990. Notice of Removal [Docket No. 1] Attach. 1, Compl. ¶ 2. Zupancich

alleges that U.S. Steel does not pay its hourly employees for the time lag that exists between when an employee "swipes-in" at the security gate and when he arrives at his work station.  Id. ¶¶ 4-6.  Additionally, U.S. Steel deducts six minutes of paid work time if an employee swipes his card leaving the premises prior to six minutes following the time his shift.  Id. ¶ 11.  U.S. Steel employs roughly 1000 employees at Minntac and roughly 600 employees at its location in Keewatin, Minnesota ("Keetac").  Id. ¶ 15.  With changes in the workforce, the number of proposed class members will likely exceed 1800.  Id.

Zupancich commenced this action in state court alleging a violation of the Minnesota Fair Labor Standards Act ("Minnesota FLSA").  Minn Stat. §§ 177.21-177.35.  On October 27, 2008, U.S. Steel removed to federal court on the basis of federal question jurisdiction and diversity jurisdiction under the Class Action Fairness Act ("CAFA"),  28 U.S.C. § 1332.  Zupancich moved to remand the action back to state court on November 14, 2008.

### III.  DISCUSSION

A case shall be remanded back to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction.  See In re Bus. Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993).  When considering a motion to remand, a court must resolve all doubts questioning federal jurisdiction in favor of remand.  See id.  U.S. Steel asserts two grounds for federal jurisdiction, a federal question under 28 U.S.C. § 1337 and diversity jurisdiction under CAFA.

**A.     Federal Question Jurisdiction**

U.S. Steel argues that a federal question is presented because the disposition of this

action requires the Court to consider the collective bargaining agreement ("CBA") between the parties, which triggers complete preemption of the state law claims under federal labor law.  See Schuver v. MidAmerican Energy Co., 154 F.3d 795, 798-99 (8th Cir. 1998) (holding that when a state law claim is based on a CBA or is "inextricably intertwined" with the CBA and substantially dependent on an analysis of the terms therein, the state law claims are completely preempted by 29 U.S.C. § 185(a) ("section 301(a)")).  "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  28 U.S.C. § 1441(b).  "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. . . ."  28 U.S.C. § 1337(a); Avco Corp. v. Machinists, 290 U.S. 557, 561-62 (1968) (holding that § 1337(a) provides district courts with original jurisdiction for a § 301 action).

Plaintiffs did not explicitly plead a federal question in his complaint, and as a general rule federal jurisdiction may only be invoked "where a federal question is presented on the face of plaintiff's properly pleaded complaint."  Krispin v. May Dep't Stores Co., 218 F.3d 919, 922 (8th Cir. 2000).  However, "[w]hen a plaintiff has artfully pleaded in a manner that avoids an element of the [claim] that rests on federal law, the court may uphold removal even though no federal question appears on the face of the plaintiff's complaint."  Gore v. Trans World Airlines, 210 F.3d 944, 950 (8th Cir. 2000).  The Court finds that a federal question exists because the determination of whether U.S. Steel violated the Minnesota FLSA is inextricably intertwined with an analysis of the CBA.

Minnesota Administrative Rule 5200.0120, subpart 1 states: "The minimum wage must

be paid for all hours worked.  Hours worked include . . . time when the employee [] must be on the premises."  The application of that rule, however, is subject to other provisions in the Minnesota FLSA including the following: "Nothing in [the Minnesota FLSA] limits the rights of employees to bargain collectively with their employers through representatives of their own choosing to establish wages and other conditions of work more favorable to the employees than those required by [the Minnesota FLSA]."  Minn. Stat. § 177.35.  Thus, the Minnesota FLSA requires that where a CBA exists, a court must evaluate the CBA to determine whether in the process of bargaining there have been negotiations between the parties to give the employees more favorable work conditions in exchange for FLSA protections.

One trade-off employees may have chosen to make was to concede travel time while on a work site in exchange for a higher hourly wage.  U.S. Steel has produced a letter of agreement between the company and the employees' bargaining representative that states: "The Parties agreed that starting in 1947, every national collective bargaining agreement or BLA negotiated by the Parties has included an agreement that the Company is not obligated to pay Employees for prepatory or closing activities which occur outside of their scheduled shift or away from their worksite. . . ." Skube Decl. [Docket No. 16] Ex. B.  Manager of Employee Relations, John Skube, also states that this letter became part of the 2008 CBA upon its ratification on September 9, 2008.  Skube Decl. ¶ 14.  Additionally, the CBA contains a provision recognizing "Local Working Conditions," which are practices that reflect local practices about wages, hours of work, and other conditions of employment.  Id. ¶ 15.  Finally, it appears that the employee union filed a grievance about the institution of the swipe-in system in 2002.  Skube Decl. Ex. D.  Therefore, the proper resolution of these claims would undoubtably require careful examination

of the CBA and its interaction with the Minnesota FLSA.  See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (finding that state law claims whose resolution is substantially dependent upon or inextricably intertwined with the terms of such an agreement are preempted under § 301).  Therefore, a federal question exists, and the motion for remand is denied.

**B.     Diversity Jurisdiction**

Even lacking federal question jurisdiction, this case is properly before the Court on the basis of diversity jurisdiction established by CAFA.  Under CAFA, a district court has original jurisdiction over any civil action "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  Because U.S. Steel removed this action, it bears the burden of establishing, by a preponderance of the evidence, that federal jurisdiction is appropriate.  James Neff Kramper Fam. Farm P'ship v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005).

Plaintiffs do not dispute diversity of citizenship, but disputes whether the amount in controversy exceeds $5,000,000.  He argues that too many fact questions exist for U.S. Steel to establish by a preponderance that the action will meet this threshold.  The parties have presented dramatically different calculations for the likely amount in controversy based on the inclusion or exclusion of different factors.  Plaintiffs estimate recovery at $3,482,068 based on a class of roughly 1,400 members, alleged uncompensated time of .3 hours a day, and no inclusion of attorneys' fees.  Pl.'s Reply Mem. in Supp. of Mot. to Remand [Docket No. 19] at 8.  The lower of U.S. Steel's two estimates places the amount in controversy at $5,424,853.50 based on a class of 1,800 members, alleged uncompensated time of .33 hours a day, and attorneys' fees of 10% of

recovery.  Def.'s Mem. in Opp'n to Mot. to Remand [Docket No. 15] at 28.

While the Court questions the methodologies of both parties in their determination of the amount in controversy (Plaintiff's class number does not factor in turnover, U.S. Steel's number for uncompensated time is slightly larger than the amount alleged in the complaint, and both parties' calculations are based on the minimum wage which may or may not be the correct rate to apply) , the issue largely turns on whether attorneys' fees should be included in the calculation. Plaintiff relies on Ongstad v. Piper Jaffray & Co., for the proposition that where a complaint makes a "mere reference to attorneys' fees in the prayer for relief" a court should not factor those fees into the amount in controversy under CAFA.  407 F. Supp. 2d 1085, 1092 (D.N.D. 2006).  Plaintiffs overstate the holding.  Ongstad also notes that the Eighth Circuit "permits the court to consider attorneys' fees in determining the amount in controversy."  Id. at 1091; see also Capitol Indem. Corp. v. Miles, 978 F.2d 437, 438 (8th Cir. 1992).  In fact, the Minnesota FLSA requires a defendant found in violation of the statute to pay reasonable attorneys' fees.  Minn. Stat. § 177.27, subd. 10.  The Court finds that based on the best calculations by the parties and the inclusion of attorneys' fees, U.S. Steel has established by a preponderance of the evidence that the amount in controversy will likely exceed $5,000,000.  For this reason, Plaintiff's motion to remand is denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff John Zupancich's Motion to Remand [Docket No. 7] is **DENIED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 31, 2008.